IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PAN AMERICAN LIFE INSURANCE COMPANY OF PUERTO RICO,**

**Plaintiff**

**v.**

**MEDCO HEALTH SOLUTIONS, INC.,**

**Defendant.**

**CIVIL NO. 15-1173 (GAG)**

**OPINION AND ORDER**

In this case, Plaintiff Pan American Life Insurance Company of Puerto Rico ("Pan American") claims that Defendant Medco Health Solutions, Inc. ("Medco") breached the contract between them, under which Medco would provide pharmacy benefits management services to Pan American and its subsidiaries.[1]  (Docket No. 69.)   Medco filed a counterclaim, alleging that Pan American breached the same contract by violating its exclusivity provision.  (Docket No. 89.) Presently before the Court is Pan American's motion to dismiss Medco's counterclaim for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).  (Docket No. 46.) For the reasons that follow, the motion is **DENIED**.

**I.   Relevant Factual and Procedural Background**

Medco is a pharmacy benefit management company that contracted to provide and administer pharmacy benefit management services to Pan American.  (Docket No. 89 ¶ 3.)  Pan American is an insurance company engaged in the business of providing payment of prescription drugs and related services to individuals under contract or affiliation with Pan American.  (Docket

---

[1] Pursuant to the parties' joint stipulation and motion to substitute Medco Health Solutions, Inc. for the original named defendant, Express Scripts, Inc., the Court will hereinafter refer to defendant exclusively as Medco. (Docket Nos. 74; 75.)

**Civil No. 15-1173 (GAG)**

No. 69 ¶ 4.) Pursuant to the Integrated Prescription Drug Program Master Agreement, (the "Agreement") Medco was the exclusive provider for Pan American and its subsidiaries.[2] (Docket No. 89 ¶ 8.) Specifically, Medco was retained "to provide a prescription drug benefit program, including but not limited to, retail pharmacy, mail order pharmacy, and specialty drug pharmacy services for eligible persons, point of care, physician office communications and cost containment initiatives developed and implemented by Medco, which may include communications with prescribers, patients, and/or participating pharmacies, and financial incentives to participating pharmacies for their participation in such initiative (collectively, "PBM Services")." Id. ¶ 9.

In the counterclaim, Medco alleges that Pan American violated the exclusivity provision of the Agreement by using providers or administrators, other than Medco, for pharmacy benefit management services for some of its member groups, and continued to do so after Medco notified Pan American that it was in breach of the Agreement. (Docket No. 89 ¶¶ 9-11.) Medco contends that by sending its member groups to other vendors, Pan American "necessarily reduced the revenue and profits Medco would have received" if Pan American had complied with the exclusivity provision. Id. ¶ 9. By way of example, Medco states that because prescriptions for those group members who used different vendors did not use Medco mail order pharmacies or Medco's network of retail pharmacies, Medco was deprived of payments and associated fees related to those prescriptions. Id. ¶ 13. Thus, Medco claims that it suffered damages as a result.

---

[2] This exclusivity provision is memorialized in Section 12 of the Agreement. It reads as follows:

> Medco will be the exclusive provider and administrator of PBM Services to [Pan American] and its subsidiaries while this Agreement is in effect. Nothing contained herein, however, will prohibit Medco or any affiliated entity from providing or administering PBM Services and related programs and services to any other entity while this Agreement is in effect.

(Docket No. 1-1 at 10.)

## II.     Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.   A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55.  Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense.  Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III.    Legal Analysis

In its motion to dismiss the counterclaim, Pan American challenges Medco's ability to satisfy the Twombly and Iqbal pleading requirements as to the damages element of its breach of contract claim, arguing that "the damages allegations are based on pure speculation, not facts." (Docket No. 46 at 2.)  The Court disagrees.

The parties' Agreement is governed by New Jersey law.[3]  (Docket Nos. 51 at 4; 54 at 4.) Under New Jersey law, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result."  Datasphere, Inc. v. Computer Horizons Corp., No. 05-2717, 2009 WL 2132431, at *6 (D.N.J. July 13, 2009) (citing Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super Ct. App. Div. 2007)).   In order to satisfy the damages element, a plaintiff must demonstrate that the damages he suffered were the "direct and proximate result of the breach."  Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co., 607 F. Supp. 361, 367 (E.D. Pa. 1985) (summarizing New Jersey breach of contract law).  A plaintiff may recover lost profits as damages when they "might have been realized and are capable of being estimated with a reasonable degree of accuracy."  Id.

In this case, Medco claims that its damages result from Pan American's violation of the exclusivity provision because Pan American "reduced the revenue and profits Medco would have received" by using other vendors in addition to Medco.  (Docket No. 89 ¶ 13.)  Medco asserts lost profits to the extent that Pan American used other providers or administrators for pharmacy benefit

---

[3] Section 13.10 of the Agreement states as follows: "This Agreement will be construed and governed in accordance with the laws of the State of New Jersey." (Docket No. 1-1 at 12.)

4

management services, specifically where prescription drugs were not filled at Medco mail order pharmacies or within its network of retail pharmacies. Id. ¶¶ 12-13. Though Medco did not provide an exact dollar amount, stating instead that it "has been damaged in an amount to be determined at trial," these lost profits are not speculative. Id. ¶ 2. Rather, a simple calculation of the profits to other providers or administrators resulting from any violation of the exclusivity provision is easily determined with a reasonable degree of accuracy.

Medco's allegations in its counterclaim support the essential elements of a breach of contract claim under New Jersey law because Medco described a valid contract, claimed that its exclusivity provision was breached, causing Medco to suffer damages associated with profits it would have had under the Agreement. Thus, Medco stated enough factual allegations to enable the Court to determine that its claim is plausible on its face. Twombly, 550 U.S. at 570. Because the pleading requirements merely compel Medco to articulate "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to give the respondent fair notice of the nature of the claim and its underlying basis, Medco has sufficiently pleaded a breach of contract counterclaim in this case. FED. R. CIV. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citations omitted).

**IV. Conclusion**

In sum, the Court **DENIES** Plaintiff's motion to dismiss the defendant's counterclaim at Docket No. 46.

**SO ORDERED.**

In San Juan, Puerto Rico this 3rd day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge