IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PAN AMERICAN LIFE INSURANCE
COMPANY OF PUERTO RICO,

Plaintiff

v.

MEDCO HEALTH SOLUTIONS, INC.,

Defendant.

CIVIL NO. 15-1173 (GAG)

**OPINION AND ORDER**

In this case, Plaintiff Pan American Life Insurance Company of Puerto Rico ("Pan American") claims that Defendant Medco Health Solutions, Inc. ("Medco") breached the contract between them, under which Medco would provide pharmacy benefits management services to Pan American and its subsidiaries.[1] (Docket No. 69.)  Medco filed a counterclaim, alleging that Pan American breached the same contract by violating its exclusivity provision. (Docket No. 89.) Presently before the Court is Medco's motion for partial dismissal of the Second Amended Complaint. (Docket No. 76.) For the reasons that follow, the motion is **GRANTED**.

**I.   Relevant Factual and Procedural Background**

Pan American is an insurance company engaged in the business of providing payment of prescription drugs and related services to individuals under contract or affiliation with Pan American. (Docket No. 69 ¶ 4.) Pursuant to the Integrated Prescription Drug Program Master Agreement, (the "Agreement") Medco was the exclusive provider for Pan American and its

---

[1] Pursuant to the parties' joint stipulation and motion to substitute Medco Health Solutions, Inc. for the original named defendant, Express Scripts, Inc., the Court will hereinafter refer to defendant exclusively as Medco. (Docket Nos. 74; 75.)

**Civil No. 15-1173 (GAG)**

subsidiaries.[2] (Docket No. 89 ¶ 8.) Specifically, Medco was retained "to provide a prescription drug benefit program, including but not limited to, retail pharmacy, mail order pharmacy, and specialty drug pharmacy services for eligible persons, point of care, physician office communications and cost containment initiatives developed and implemented by Medco, which may include communications with prescribers, patients, and/or participating pharmacies, and financial incentives to participating pharmacies for their participation in such initiative (collectively, "PBM Services")." Id. ¶ 9.

It its Second Amended Complaint, Pan American added allegations seeking damages for the decision of certain third-party customer groups to terminate their policies with Pan American as a result of Medco's mishandling of claims. (See Docket No. 69 ¶ 3.) Pan American maintains that Medco's failure to process and administer claims correctly, and failure to implement a platform according to Pan American's directives, resulted in several problems with the program. Id. ¶ 43. Pan American alleges these actions resulted in "economic losses, lost business opportunity, and damages to [Pan American]'s business and reputation." Id. The third-party customers that decided to terminate or not renew their policies include groups like Servicios Legales de Puerto Rico, Inc., and Empresas Vasallo, Inc. Id. ¶ 17. Pan American seeks $554,786.69 in estimated annual economic damages related to the third-party customer' contracts. Id. ¶ 44.

**II. Standard of Review**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v.

---

[2] The Agreement is the base of Pan American's breach of contract claim, and governs the rights of the parties in this dispute.

Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility."  Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**III.    Legal Analysis**

In its motion to dismiss, Medco maintains that these new added claims seek consequential damages, which are prohibited under the Agreement. (Docket No. 76 at 2.)   Thus, Medco argues

any claim for consequential damages based on these allegations must be dismissed. Id. The Court agrees.

The parties' Agreement is governed by New Jersey law.[3] (Docket Nos. 51 at 4; 54 at 4.) Under New Jersey law, consequential damages are defined as collateral losses of profit following a breach. Atl. City Assoc., LLC, v. Carter & Burgess Consultants, Inc., 453 Fed. App'x 174, 179 (3d Cir. 2011) (unpublished) ("[l]ost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. . . . When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost."). Analyzing a breach of contract case, a sister court found consequential damages similar to the ones in this case were barred under the contract's limitation of liability provision. See Werner & Pfleiderer Corp. v. Gary Chem. Corp., 697 F. Supp. 808, 812 (D.N.J. 1988), abrogated on other grounds by Lo Bosco v. Kure Engr. Ltd., 891 F. Supp. 1020 (D.N.J. 1995) ("the better description for certain claimed damages [ . . .], such as lost sales opportunity, is 'consequential.'"). In this case, Pan American has based its newly added allegations on the fact that, because of Medco's breach, it suffered collateral losses from third-party groups that terminated or refused to renew their contracts. These losses do not arise from the Agreement itself, and as such, are deemed "consequential."

Section 11.6 of the Agreement states: "Medco or [Pan American] will not be liable to each other for incidental, consequential, punitive, special, or exemplary damages." (Docket No. 1-1 at 10.) Under this clause, the parties agreed that the type of damages alleged by Pan American are barred by the Agreement. "In New Jersey, contractual limitations on consequential damages are permitted unless unconscionable." Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc., 363

---

[3] Section 13.10 of the Agreement states as follows: "This Agreement will be construed and governed in accordance with the laws of the State of New Jersey." (Docket No. 1-1 at 12.)

4

Fed. Appx. 963, 966 (3d Cir. 2010) (unpublished) (citing N.J. STAT. ANN. § 12A:2-719(3)). Neither party has challenged the validity of the Agreement. The Court holds the contractual limitation in the Agreement enforceable, and neither party can recover consequential damages in this case.

Pan American does not oppose Medco's motion for partial dismissal on the merits. Instead, it argues that Medco is advancing inconsistent positions "in blatant violation of the principle of judicial estoppel." (Docket No. 93 at 2.) Judicial estoppel is a judge-made doctrine that prevents a litigant from asserting inconsistent positions "in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). Three requirements must be satisfied: (1) the party to be estopped has taken two irreconcilably different positions; (2) the party changed its position in bad faith; and (3) no lesser sanction would address the damage done by the misconduct. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003).

Medco's counterclaim alleges that Pan American diverted groups to other vendors, and "necessarily reduced the revenue and profits Medco would have received if [Pan American] had performed its obligations under the Agreement."[4] (Docket No. 89 ¶¶ 13, 20.) As a result, Medco seeks "compensatory damages to which it is entitled, including, but not limited to, lost revenues and lost profits." Id. at 4. Pan-American argues Medco should be judicially estopped from basing its motion to dismiss on the Agreement's prohibition of consequential damages argument when Medco sought the same kind of damages in its Amended Counterclaim. Pan-American's judicial estoppel showing fails at every step. First, Pan-American has not established that the type of

---

[4] "For example, because prescriptions for members of those groups were not filled at Medco mail order pharmacies and Medco's network of retail pharmacies, Medco was deprived of payments related to those members' prescriptions and contractual fees that PALIC would have owed related to services Medco would have provided related to those members." (Docket No. 89 ¶¶ 13, 20.)

**Civil No. 15-1173 (GAG)**

damages sought by Medco in its counterclaim are similar to the ones at issue in this motion. In fact, Medco maintains and thoroughly explains that there is a legal and factual difference between the lost profit damages at issue in this motion, and those asserted by Medco in its counterclaim.[5] (Docket No. 98 at 2-5.) Without proving to the Court that Medco has indeed taken irreconcilably inconsistent positions, judicial estoppel cannot be applied. Additionally, Pan American failed to show bad faith on Medco's end, or that any lesser sanction would not adequately remedy the damage. Judicial estoppel is inapplicable at this juncture.

In the alternative, Pan American "adopts and incorporates by reference the argument raised by Medco in its Motion for Partial Dismissal and move[s] to dismiss Medco's Amended Counterclaim on the same grounds." (Docket No. 93 at 11.) This, it cannot do. Pan American bases its attempt on a faulty understanding of Local Rule 10. See L.Cv.R. 10. If Pan American wishes, it can advance this theory by way of its own motion, pursuant to the applicable law.[6]

### IV. Conclusion

Because neither party can recover consequential damages in this case, the Court **GRANTS** Medco's Partial Motion to Dismiss at Docket No. 76.

**SO ORDERED.**

In San Juan, Puerto Rico this 13th day of July, 2016.

                                               *s/ Gustavo A. Gelpí*
                                               GUSTAVO A. GELPI
                                               United States District Judge

---

[5] Medco maintains that "unlike the damages requested by [Pan American] . . . Medco's lost profit damages were not collateral to [Pan American]'s breach of the Agreement but were the direct and natural result of the breach." Id. at 3.

[6] At Docket No. 94, Pan American moved for motion for entry of order suspending Pan American's duty to answer or otherwise plead the amended counterclaim at Docket No. 89, until the Court resolved this motion. Pan American's motion at Docket No. 94 is deemed **MOOT** in light of today's decision. Pan American now must answer Medco's counterclaim in accordance with the Federal Rules of Civil Procedure.